1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  MICHELE SCHUMAN, individually and          CASE NO. C10-980-RSM
    as Personal Representative of the Estate of
11  Bryan Schuman, deceased,                    ORDER ON PRESSTEK, INC'S
                                                MOTION FOR SUMMARY
12                   Plaintiff,                 JUDGMENT OR PARTIAL
                                                SUMMARY JUDGMENT
13            v.

14  VARN INTERNATIONAL, INC., a
    Delaware corporation, DAY
15  INTERNATIONAL, INC., a Delaware
    corporation, FLINT GROUP NORTH
16  AMERICA CORPORATION, a Michigan
    corporation, FLINT GROUP, a
17  Luxembourg company, and PRESSTEK,
    INC., a Delaware corporation,
18
                     Defendants.
19

20

21

22

23

24

## I. INTRODUCTION

       This matter comes before the Court upon Defendant Presstek Inc.'s ("Presstek's") motion

for summary judgment (Dkt. #80).  For the reasons set forth below, Presstek's motion is

GRANTED.

## II. DISCUSSION

**A.  Background**

Bryan Schuman was exposed to Blankrola from 1977 to 1998 through his work in the printing industry.  Plaintiff alleges that benzene in Blankrola caused or contributed to cause Bryan Schuman's death in April of 2009.

Blankrola is a solvent used to remove ink off printing press blankets and rollers. Blankrola was sold and distributed by a company called Multigraphics, Inc. until about 2000, when Multigraphics merged into A.B. Dick, which then sold and distributed Blankrola until 2004.

In late 2003, A.B. Dick was in financial distress.  A.B. Dick and Presstek entered into negotiations for the sale of A.B. Dick to Presstek.  These negotiations led to a Stock Purchase Agreement between A.B. Dick and Presstek that was not consummated due to the actions of an A.B. Dick lender.

A.B. Dick and Presstek then entered into an asset purchase agreement for the sale of A.B. Dick's assets to Presstek.  The asset purchase agreement between Presstek and A.B. Dick was conditional upon A.B. Dick filing for bankruptcy.  Under the asset purchase agreement, A.B. Dick agreed to sell its assets to Presstek (or the highest bidder) for $40 million subject to final court approval.  A.B. Dick was prohibited, under the asset purchase agreement with Presstek, from negotiating the sale of its assets to companies other than Presstek outside of bankruptcy proceedings.

On July 13, 2004, A.B. Dick filed for bankruptcy relief.  On November 1, 2004, auction proceedings were held.  Presstek, Comvest and Harbor made bids to purchase A.B. Dick's assets.

During the auction, Presstek improved its bid.  At the conclusion of the hearing, Presstek was declared the prevailing bidder.

On November 2 and 3, 2004, the Bankruptcy Court held a hearing on A.B. Dick's motion to approve the sale to Presstek.  After two days of adversarial hearing, with testimony by various witnesses, the Court approved the sale and the terms of the Asset Purchase Agreement between A.B. Dick and Presstek and issued a Bankruptcy Sale Order.

A.B. Dick is no longer in business. The Blankrola formula has remained the same from the time it was sold and distributed by Multigraphics and A.B. Dick to the present.  Blankrola is currently branded and marketed by Presstek under both the Presstek and A.B. Dick names.

Defendant moves for summary judgment on all of Plaintiff's claims, arguing that Plaintiff cannot maintain a product liability claim against Presstek because the claim is barred by federal bankruptcy law and the Bankruptcy Order, and that the product line exception to successor liability under Washington law does not apply.

**B.  Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the

1  nonmoving party must make a "sufficient showing on an essential element of her case with

2  respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v.*

3  *Catrett,* 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of a scintilla of evidence in

4  support of the plaintiff's position will be insufficient; there must be evidence on which the jury

5  could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

6  **C. Analysis**

7  "The general rule in Washington is that a corporation purchasing the assets of another

8  corporation does not, by reason of the purchase of assets, become liable for the debts and

9  liabilities of the selling corporation." *Hall v. Armstrong Cork, Inc.*, 103 Wash. 2d 258, 261-63,

10  692 P.2d 787, 789-90 (1984).  In *Martin v. Abbott Labs.*, the Washington Supreme Court

11  "determined that the policies underlying strict liability in tort necessitated the formation of an

12  additional exception or rule to address the particular circumstances of a products liability

13  claimant." 102 Wash. 2d 581, 593, 689 P.2d 368, 376 (1984).  Accordingly, it adopted the

14  "product line rule" of liability articulated in the California Supreme Court decision *Ray v. Alad*

15  *Corp.,* 19 Cal.3d 22, 560 P.2d 3 (1977).[1]

16  In *Hall*, the Supreme Court clarified that the product line exception only applies where

17  the successor corporation *caused* the destruction of Plaintiff's remedies against its predecessor.

18  *Hall*, 692 P.2d at 792 ("A key premise of the product line exception is that successor liability is

19  only appropriate when the successor corporation by its acquisition actually played some role in

20  _____

21  [1] Under the "product line rule" a corporation that purchases the assets of another
corporation is liable where (1) "the transferee has acquired substantially all the transferor's
22  assets, leaving no more than a mere corporate shell"; (2) the "transferee is holding itself out to
the general public as a continuation of the transferor by producing the same product line under a
23  similar name"; and (3) "the transferee is benefiting from the goodwill of the transferor". *Abbott*
*Labs.*, 689 P.2d at 376.

24

1  curtailing or destroying the claimants' remedies.").  This is because, "[t]he traditional corporate

2  rule of nonliability is only counterbalanced by the policies of strict liability when acquisition by

3  the successor, and not some later event or act, virtually destroys the ability of the plaintiff to seek

4  redress from the manufacturer of the defective product." *Id.*

5       On its motion for summary judgment, Defendant argues Plaintiff has failed to produce

6  evidence of a causal connection between the unavailability of Presstek's predecessor and

7  Presstek's acquisition of the product line as required under *Hall*.  Plaintiff responds that the

8  causation requirement as articulated by Defendant does not exist under Washington law.  In the

9  alternative, Plaintiff argues that she has raised a genuine dispute of material fact as to whether

10  Presstek colluded with A.B. Dick to eliminate Plaintiff's tort remedies.

11       As an initial matter, the Court agrees with Defendant that the causation requirement in

12  *Hall* is applicable to this matter.  It is true that *Hall* involved a case in which the successor

13  corporation purchased less than the entirety of the predecessor's assets and that the predecessor

14  only entered bankruptcy several years after that acquisition.  Here, Presstek purchased all of A.B.

15  Dick's assets directly out of bankruptcy.  Nevertheless, the underlying reasoning in *Hall* applies

16  equally to these facts as they did to the facts in *Hall.*

17       The Washington Supreme Court wrote in *Hall:*

18       The requirement of a transfer of the substantial assets of the predecessor together
         with its goodwill is founded on the policy that the successor has benefited from
19       the predecessor's goodwill and *has acquired the resources* to compensate the
         victims of the predecessor's manufacturing defects. The destruction of the
20       predecessor by acquisition and the benefits derived by the successor from the
         predecessor's product line preserves a sense of balance in the rule of successor
21       liability, making it more than an unbalanced assertion of social policy.

22  692 P.2d at 792.  Thus, *Hall* recognized that, where causation is present, the successor company

23  holds the assets of the predecessor that would otherwise be used to compensate injured plaintiffs.

24

ORDER ON PRESSTEK, INC'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY
JUDGMENT - 5

1  This provides a "sense of balance" in the rule of successor liability that would not exist were

2  causation not present.  *Id.*

3          Here, Presstek acquired A.B. Dick's assets out of bankruptcy.  By purchasing A.B.

4  Dick's assets at auction in bankruptcy, Presstek did not necessarily acquire "the resources to

5  compensate the victim's of the predecessor's manufacturing defects."  *Hall*, 692 P.2d at 792.

6  More importantly, had Presstek *not* acquired A.B. Dick, the financially distressed A.B. Dick

7  would presumably not have the resources to compensate Plaintiff itself.  Thus, the "sense of

8  balance" that was lacking in *Hall* is equally lacking here.  *See also Hall,* 692 P.2d at 791

9  ("elemental fairness demands that there be a causal connection between the successor's

10 acquisition and the unavailability of the predecessor").

11         Indeed, courts outside the state interpreting the "product line rule" of *Ray* have repeatedly

12 imposed the causation requirement in circumstances such as these.  For example, in *Nelson v.*

13 *Tiffany Indus., Inc.*, the Ninth Circuit held that the causation requirement applied where, as here,

14 a successor company purchased another company's assets in bankruptcy.  778 F.2d 533, 538 (9th

15 Cir. 1985).  It determined that successor liability under the "product line rule" would not be

16 imposed in those circumstances unless the claimant could prove that the successor company had

17 induced its predecessor to file for bankruptcy and the bankruptcy itself was "intended to avoid

18 future tort claims against the predecessor."  *Id.  See also Stewart v. Telex Communications, Inc.*,

19 1 Cal. App. 4th 190, 200, 1 Cal. Rptr. 2d 669, 676 (1991) (same); *Tracey by Tracey v.*

20 *Winchester Repeating Arms Co.*, 745 F. Supp. 1099, 1108 (E.D. Pa. 1990) *aff'd,* 928 F.2d 397

21 (3d Cir. 1991) (predicting that "if the Pennsylvania Supreme Court were to adopt the product line

22 exception, it would follow *Nelson* and require as a prerequisite to applying the exception some

23

24

1  showing of causation").   The Court sees no reason why the causation requirement set forth in

2  *Hall* should not apply to this case.

3       Having determined that the causation requirement applies, the Court turns to whether

4  Presstek "destroy[ed] the ability of the plaintiff to seek redress from the manufacturer of the

5  defective product"—in this case, A.B. Dick.  *Hall*, 692 P.2d at 792.  There is no dispute that

6  Presstek purchased A.B. Dick's assets after A.B. Dick entered bankruptcy.  Thus, it was the

7  bankruptcy, not the subsequent purchase of assets, that destroyed plaintiff's remedies against

8  A.B. Dick.  *See Nelson*, 778 F.2d at 538.  Unless Presstek "induc[ed] [A.B. Dick] to file a

9  petition for reorganization" and that conduct "caused or contributed to the loss of plaintiff's

10  remedies," Presstek is not liable for A.B. Dick's tort liabilities to plaintiff.  *Id.*

11       Plaintiff argues that there is evidence from which a jury could find that Presstek caused a

12  distressed A.B. Dick to go into bankruptcy, thus eliminating any remedy that plaintiff could later

13  have against A.B. Dick.  Specifically, Plaintiff points to the fact that A.B. Dick and Presstek

14  negotiated a stock purchase agreement for the sale of A.B. Dick prior to bankruptcy that

15  ultimately fell through, placing A.B. Dick in financial distress.  A.B. Dick and Presstek then

16  entered an asset purchase agreement for the sale of A.B. Dick's assets to Presstek, but Presstek

17  made the agreement conditional upon A.B. Dick first filing for bankruptcy.  A. B. Dick was

18  prohibited by Presstek from negotiating the sale of its assets to companies other than Presstek

19  outside of the bankruptcy proceedings.

20       The Nelson court held that the product line exception might apply if the plaintiff could

21  show that the successor corporation "*induced* [its predecessor] to file for bankruptcy *to avoid*

22  *future tort liability*."  778 F.2d at 538 (emphasis added).  The evidence cited by Plaintiff does not

23  support the conclusion that Presstek induced A.B. Dick to file for bankruptcy.  Moreover,

24

1   Plaintiff has produced no evidence that any alleged inducement was for the purpose of avoiding

2   future tort liability.  Rather, the evidence shows that A.B. Dick was already in distress when it

3   entered into the stock purchase agreement with Presstek.  That agreement fell through because

4   A.B. Dick's lender, Key Bank, refused to agree to continue funding A.B. Dick as necessary to

5   ensure adequate funding through the closing and to forebear from declaring any default under its

6   loan agreement until the deal closed.  *See* Dkt. #82, Ex. I.[2]  Once Key Bank refused to consent to

7   the stock purchase transaction, A.B. Dick filed for bankruptcy.  The evidence produced by

8   Presstek supports the contention that A.B. Dick was in financial distress when it filed for

9   bankruptcy.  *Id.*  Plaintiff has produced no evidence suggesting otherwise.

10          After a two-day hearing on the parties' motion to approve the sale of A.B. Dick's assets

11   to Presstek out of bankruptcy, the Bankruptcy Court found that Presstek was not an insider, there

12   was no collusion between Presstek and A.B. Dick, and that the transaction  was in good faith and

13   the result of arm's length transactions.  *Id.* at Ex. G.  Thus, Presstek has also produced evidence

14   that A.B. Dick and Presstek were not colluding and engaged in an arm's length transaction.

15   Plaintiff has produced no evidence of collusion.  The fact that Presstek and A.B. Dick had

16   attempted to close a stock purchase agreement prior to bankruptcy does not call the Bankruptcy

17   Court's findings into question nor does it constitute evidence of collusion or impropriety.

18          The Court finds that Plaintiff has failed to make "sufficient showing on an essential

19   element of her case."  *Celotex,* 477 U.S. at 323.  Namely, Plaintiff has failed to produce evidence

20   that Presstek colluded with or induced A.B. Dick to enter into bankruptcy to avoid future tort

21   liability.  Presstek has produced evidence to the contrary, which Plaintiff has failed to refute or

22

23   _____

24   [2]  The Court takes judicial notice of the documents produced by Defendants at Dkt. #82.  *See*
     Fed. R. Evid. 201.

otherwise call into question.  On this record, the Court finds that no reasonable jury could find that Presstek induced A.B. Dick to enter into bankruptcy to avoid future tort liability and therefore the "product line rule" does not apply.  Presstek is not liable for injuries related to Mr. Schuman's exposure to Blankrola when it was manufactured and sold by A.B. Dick prior to November 5, 2004.  Plaintiff does not contend that Presstek is liable for Mr. Schuman's post-2004 exposure to Blankrola.  *See* Dkt. # 85, p. 2.  Accordingly, Presstek's motion for summary judgment is hereby GRANTED.  The Court declines to address the remaining bases for Presstek's motion.

### III. CONCLUSION

Having considered Presstek's motion, the response and reply thereto, all of the attached declarations and exhibits, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant Presstek's motion for summary judgment (Dkt. #80) is GRANTED.

(2) This matter is hereby dismissed with prejudice.

Dated this 10 day of September 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE